JAMES H. KERR *v.* JOHN D. FREEMAN.

1. VENDOR AND VENDEE: QUITCLAIM DEED: EFFECT OF.—A quitclaim deed, or a deed of release, at common law, operated merely as an enlargement of the estate of the releasee, and did not have the effect of a technical conveyance, un-

Kerr v. Freeman.

less the releasee were in possession of the land at the time; but by our sta-tute (Hutch. Dig. 610, ∂ 28), such a deed will transfer the whole interest of the bargainor, or releasor, in the land intended to be conveyed, to the bargainee, or releasee, and may be made the foundation of any action, which could have been sustained by the person making it.

2. CHANCERY: COMPLAINANT SEEKING CANCELLATION: MUST SHOW CLEAR TITLE IN HIMSELF.—A court of equity will not grant relief to a party seeking the cancellation of title deeds, held by his adversary, and which, he alleges, consti-tute a cloud on his title, unless the complainant shows a clear title to the land in himself; if he have a doubtful title he will be left to his remedy at law.

3. VENDOR AND VENDEE: QUITCLAIM DEED IMPLIES DOUBTFUL TITLE: BILL TO REMOVE CLOUD, ETC.—A quitclaim deed implies a doubtful title in the per-son who executes it, and it will be treated as passing only a doubtful title to the releasee; and hence, if the complainant, only has a quitclaim deed to the pre-mises, he cannot maintain a bill to remove clouds upon his title, especially when it is shown, that neither the complainant nor the releasor had possession at the time the deed was executed.

4. SAME: PARTY IN POSSESSION MAY PURCHASE OUTSTANDING TITLE.—A party in possession of land is always at liberty to protect himself, by purchasing an outstanding title, and he may do so, even after a bill has been filed against him, if he do not purchase from one under whom the complainant claims title.

5. EVIDENCE: WHEN COMPLAINANT MUST PROVE A NEGATIVE: BILL TO REMOVE CLOUD.—Where the complainant grounds his right to relief upon a negative allegation, he must prove it; and hence, where a bill is filed to cancel a deed, upon the ground that it was never executed, and which it is alleged, casts a cloud upon the title of complainant, it is incumbent on him to prove its non-execution, or his bill will be dismissed.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

*D. Mayes* and *T. J. Wharton*, for appellant.

*Johnston* and *Shelton*, for appellee.

*John D. Freeman*, in propriâ personâ.

FISHER, J., delivered the opinion of the court.

The object of this bill was to enjoin the defendant below, from committing waste upon the land in question, and to have certain

deeds cancelled, which the complainant alleges operate as clouds upon his title.

It appears from the allegations of the bill, that the land was patented in 1835, by the General Government, to Lewis Whitesides; that he died some time about the year of      , and that his widow, son, and grandson, who were his only heirs at law, executed a quitclaim deed, on the 19th day of August, 1847, to the complainant, under which he claims title. The bill then proceeds to state that the land is uninclosed, in the actual possession of no one, but as may be inferred from the whole tenor of the bill, in the constructive possession of the complainant; that the defendant has been for many years committing acts of trespass upon the land; that he is insolvent, and not able to satisfy a judgment, if recovered against him at law; that the defendant claims title to the land under a deed made by H. C. Daniels and wife, in 1844, and under a deed made by the sheriff of Hinds county, by which it appears that the land was sold as the property of John Shields, and purchased by the defendant, and that such deeds conveying no title to the defendant, they form clouds upon complainant's title. The prayer is that the deeds be cancelled, and the complainant confirmed in his title.

The defendant demurring to the bill, and the demurrer being overruled, filed his answer, in which he sets forth the manner in which he acquired the possession of the land; that he had been in possession for a considerable length of time, and was in possession at the date of the deed under which the complainant claims. That defendant claims title to the land, under a deed from one Moyses to the defendant; that Moyses claims under a deed made to him by Hill and wife, the latter being the only heir at law of John Shields; and that Shields, about the year 1836, purchased the land from Whitesides, who executed a deed for the same: all of which deeds are made exhibits to the answer, and the two former, to wit, the deed from Moyses to the defendant, and the deed from Hill and wife to Moyses, appear to have been executed after the bill was filed. The answer avers the defendant's solvency, &c. Upon the coming in of the answer, the complainant filed an amended and supplemental bill, alleging that the deeds from Moyses to the defendant, and from Hill and wife to Moyses, were void as to the

complainant, because they were executed after the defendant was informed of the complainant's purchase, and are fraudulent and without consideration. The amended bill then proceeds to deny all knowledge of the deed from Whitesides to Shields, and in fact charges that it was never executed. The bill then proceeds to state certain facts in regard to the complainant's title: that a judgment was rendered against Whitesides in his lifetime; that an execution issuing upon this judgment, was levied upon the land, which was sold by the sheriff, and purchased by one William R. Gist; that the land was afterwards assessed in his name, and default being made in the payment of the tax assessed, the land was purchased, on the 4th day of April, 1848, by one Watson, who in November following, executed a quitclaim deed to the complainant. This title is set up by the amended bill. The defendant, after his demurrer to this bill had been overruled, answered, stating his possession of the land, denying fraud, &c. Other matters are set forth in the answer, but do not require special notice.

The chancellor upon the hearing made the injunction, restraining the defendant from committing waste, perpetual, and decreed the cancellation of the deed from Whitesides to Shields, the deed from Hill and wife to Moyses, and the deed from him to the defendant; that the complainant be confirmed in his title, and that the sheriff of Hinds county execute the decree, &c. From which decree this appeal has been prosecuted.

Two questions must necessarily arise for our consideration. First. Has the complainant shown a clear title to the land? and, Second, supposing a clear title to have been shown, was the evidence sufficient to authorize the decree?

The bills, both original and amended, appear to have been filed by the complainants Freeman and Lewis W. Gist, the grandson and heir at law of Whitesides. The first point under the facts averred by the two bills is, whether Gist is in any manner interested in the controversy? In the first place, he is a party to the quitclaim deed executed to the complainant on the 19th day of August, 1847. By this deed he undertook to divest himself of all interest in the land. It is true that he was then an infant; and let it be admitted that he could not, by his deed, part with his title, he is still in no better condition than if the deed was operative. The

amended bill sets forth a valid sale under an execution against the ancestor, and a purchase of the land by William R. Gist, father of the complainant, Lewis W. Gist. This being the case, the title passed to the purchaser at execution sale; and William R. Gist being also a party to the quitclaim deed, his interest, which according to the amended bill, was the whole interest, passed to the complainant Freeman, who is the only person interested, as shown by the amended bill; and the controversy will, therefore, be considered as exclusively between him and the defendant. A few words will suffice, as to Freeman's title acquired under the quitclaim deed from Watson. The land had been assessed and sold as the property of Wm. R. Gist, who had previously conveyed by the quitclaim deed of the 19th August, 1847. But for this deed, Gist would have had the clear right to redeem the land from Watson, and Freeman having acquired the right of Gist, would also be entitled to redeem. Watson's quitclaim would not, therefore, operate as a conveyance to Freeman, but only as a redemption of the land, leaving him where he stood before, upon his first deed as to his title.

This preliminary point having been settled, we will proceed to consider the question relating to the complainant's title. A quitclaim deed, or in other words a deed of release, under general principles of law, can never operate as a conveyance in a technical sense, unless the party taking such deed is in possession of the land, and then the deed merely operates to enlarge the estate, whatever it may be. It could never operate as an enlargement of the estate, unless the releasee had an estate of some kind to be enlarged, such as possession of the land, or an estate for years, &c.

This rule is, however, doubtless changed by our statute (Hutch. Code, 610, § 28); and the deed may constitute the foundation of such an action as could have been maintained by the parties making it. Conceding that the statute has made this change, the deed itself implies a doubtful title, in the party who executes it; and such being its operation, can it be treated as passing anything more than a doubtful title to the complainant? This brings us to the point on this branch of the case. The rule is, that to authorize the court to give relief, the complainant must show a clear title. His deed merely shows a doubtful title, and this doubt is certainly

increased, when it is not shown that either the complainant or the persons from whom he claims, were in possession of the land at the time the deed was executed.

We will next notice the second question, whether the decree is sustained by the evidence in the cause; and the solution of this question must depend mainly upon another question, that is, upon whom did the burden of proof rest in the court below? The bill was evidently intended to be brought under the provisions of the statute of the 5th of February, 1841. This statute declares, that in all cases in which any person, not the rightful owner of any real estate, shall have a deed, or other evidence of title, which may form a cloud, or in any way cast a shadow of doubt or suspicion on the title of the real owner, such real owner may file his bill to have such cloud removed, and to be confirmed in his title. Hutch. Code, 773. The object of the bill is to cancel the three deeds already named, to wit, the deed from Whitesides to Shields, the deed from Hill and wife to Moyses, and the deed from him to the defendant. The bill avers, that the two deeds last named, having been made after the complainant's purchase, were void as to him. This position would unquestionably be true, if the defendant had under such circumstances, purchased from the same parties from whom the complainant had previously purchased; but a party in possession is always at liberty to protect himself, if he can do so, from persons who assert a title in opposition to that of the complainant. The purchase of the defendant from Moyses, could not be assailed by the complainant, unless he claimed under this party. It might be assailed on other grounds, and these grounds are, that both parties claim indirectly from Whitesides, to whom the land was patented. The complainant says, that he has traced his title by regular descent to the heirs, or by a sale under an execution, and by purchase from this party, who purchased at that sale, as well as from the heirs, and that, having shown such title, he must prevail, unless the defendant shall establish the validity of the deeds under which he claims. This would all be true, if the complainant had sued at law. But a very different case is presented, when he comes into a court of equity, asking the cancellation of the deeds. He not only undertakes to prove his own title, but to disprove that of the opposite party. The case in the court below turned upon

the fact, that the defendant failed to prove the due execution of the deed from Whitesides to Shields; for if this deed had been established, it would at once have put an end to the controversy, as it would have shown a title in a different person, whether the defendant had acquired the title or not. But the question is, who was bound to make this proof? The object of the bill was to cancel this deed. The complainant, when he brought his bill for this purpose, undertook to sustain its allegations.

The question was not whether the defendant had a perfect title, or any title at all; but whether this deed, outstanding in the hands of the heirs of Shields, was ever executed by Whitesides? The complainant undertook to show that it never was; and although it may seem to require of him the proof of a negative, yet it is but the proof of a material allegation, which he has made, and the truth of which must be established before he can claim a decree; otherwise, a bill under this statute would perform merely the office of a scire facias, to bring a party into court to show cause why his deeds should not be cancelled. Where a party grounds his right of action upon a negative allegation, he must prove it. 1 Greenl. Ev. 109, § 78. It is no answer to say that a party claiming title under a deed, must prove its execution; for the obvious reason, that the title of the defendant, in this instance, was not in issue, but merely whether certain documents evidencing his title, should be cancelled. The complainant being the party asking the cancellation, was bound to prove the facts establishing their invalidity. He was bound to show the facts which rendered the deeds mere clouds upon his title. He stated that the defendant claimed under them, and was bound to show the invalidity of such claims, either from an inspection of the deeds themselves, or by other satisfactory proofs.

We are therefore of opinion, that the decree ought to be reversed, and the bill dismissed, leaving the parties to their remedies at law.

Bill dismissed without prejudice.