SARAH M. CHAPMAN ET AL. *v.* THOMAS SIMS ET AL., AND
THOMAS SIMS ET AL. *v.* SARAH M. CHAPMAN ET AL.

1. CHANCERY. *Practice. Decree. Cancellation of deeds.*

An executor, under order of the Probate Court, sold the land of his tes-
tator, and, by the medium of another person, got the title in his wife
and children. On a bill filed by the devisees of the testator, the
Chancery Court decreed the proceedings in reference to the sale of
the land, and the title-deeds thereafter, to be null and void. *Held*,
that such decree was irregular, and that it should have declared that
the wife and children were trustees of the legal title, for the com-
plainants in the bill.

2. EQUITY. *Void sale of land by executor. Purchase-money.*

An executor, under an order of sale from the Probate Court, sold the
land of his testator, reported the amount of purchase-money, and
was charged with it by the court. The executor got the legal title
to the land in his wife and children. On a bill filed by the devisees
of his testator, the Chancery Court decreed the complainants to be
the equitable owners of the land, but refused to release the executor
from the charge for the purchase-money. *Held*, that the Chancery
Court should have discharged the executor from the charge for pur-
chase-money, in his account as executor.

3. QUITCLAIM DEED. *Bona fide purchaser.*

A quitclaim deed in a chain of title does not deprive him who claims
under it of the character of a *bona fide* purchaser.

4. SAME. *Not notice of defects.*

There is no distinction between a quitclaim and a warranty deed, as
affecting a holder with notice, or putting him on inquiry.

5. SAME. *Conveys title.*

A quitclaim deed is as effectual to convey title as one with general
warranty.

APPEAL, AND CROSS-APPEAL, from the Chancery Court of
Hinds County.

Hon. H. R. WARE, Chancellor.

J. H. Sims died on the 19th of April, 1860, leaving a widow
and several minor children. He was seised and possessed
of a tract of land, containing five hundred and forty acres,
which he gave by last will and testament to his heirs-at-law.

His brother, Thomas Sims, was appointed sole executor of the will.

On the thirtieth day of September, 1872, the children, devisees of J. H. Sims, deceased, filed their bill in chancery against Thomas Sims and others, alleging substantially as follows: At the August Term, 1866, of the Probate Court of Hinds County, Thomas Sims, as executor, by fraudulent representations and concealments, obtained an order to sell said land subject to the widow's dower to pay the debts of the decedent, J. H. Sims. On the 13th of November, 1866, the land was sold to W. R. McPherson for $1,081.50, and report of sale was confirmed by the court. The executor filed his final account on the sixth day of May, 1868, showing a balance of $982.98, for distribution on privileged claims, the chief of which was his own claim of $884.36, for commissions. On the day of the sale Thomas Sims, as executor, made a deed of said lands to McPherson, which was acknowledged on the 3d of December following; and on the next day McPherson conveyed to said Thomas Sims, for the nominal consideration of $1,200. Thomas Sims then conveyed the land to Carrie B. Sims, his wife, and their children. In February, 1870, two hundred and sixty acres of said land were sold and conveyed to W. D. Anderson, for the consideration of $2,084. The only debt for which it can be presumed that the court ordered a sale of the lands could have been paid by the executor, with Confederate money in his hands belonging to the estate. Mary V. Fartherer, one of the minor heirs, was not lawfully cited to answer the petition for such sale. The executor was the real purchaser of the lands at his own sale. The land sold for far less than its real value. McPherson bought the land at the request and for the benefit of Thomas Sims, the executor, and paid nothing for the land, not even the cost of stamping and recording the deed, and received nothing for it; but Thomas Sims paid all costs. The executor falsely represented to the court that the money for the land had been paid, and thus induced the court to confirm the sale. The complainants were all minors at the time the proceedings for sale of the land were being conducted, and relied implicitly on their mother, and the executor, who was their uncle, for

protection. The executor, to prevent opposition to the sale, induced their mother to believe that his purpose in selling the land was to save it for the children of the testator, and he promised to buy it in and convey it to them, but had not done so.

It was by false and fraudulent representations and concealments that the decree for sale was obtained. The executor indirectly, through another, purchased the land, and by false and fraudulent concealments induced the court to confirm the sale. The bill prayed for cancellation of the decree for sale of the land, the decree confirming the sale, and all the deeds to said land made thereafter, and for general relief.

On demurrer of the defendants to the complainants' bill, it was decided by the Chancellor that the decrees for sale of the land, and in confirmation thereof, were valid as against any objection to the service of legal notice on the heirs, under the petition for sale. Thomas Sims answered the bill, and denied all of its allegations which it was material to his defence should be denied. He also filed a cross-bill, stating that the decree for sale of the land was obtained for the purpose of paying the debts of the decedent and the costs of administering the estate, which could not have been paid otherwise. And he asked, that, in case the court should decree the proceedings in relation to the sale to be void and of no effect, then the land should be charged with the payment of all the debts of the decedent and the cost of administering the estate.

W. D. Anderson, in his separate answer, stated that he had no personal knowledge of the false representations and concealments mentioned in the bill, and, as far as he was informed, he believed them to be untrue. He adopted the answer of Thomas Sims as his own ; that, when he purchased a part of the land, he believed the title of the wife and children of Thomas Sims to be good, and if he had had reason to think otherwise he would not have purchased ; and that he purchased said land in good faith, for a valuable consideration, and without any notice that the complainants claimed any right or title to the same after it was sold by the executor. The complainants answered the cross-bill of Thomas Sims, denying the material allegations thereof. The parties on either side adduced a large quantity

of evidence at the final hearing. The court decreed that the relief prayed for by the complainants be granted, except as to the land conveyed to W. D. Anderson; that the decree of the Probate Court for sale of the land, the sale itself, and the decree confirming it, be declared null and void, except as to the land conveyed to Anderson; that the deed from Sims, as executor, to McPherson, the deed from McPherson to Sims, and the deed from Sims to his wife and children, be all declared null and void; and that the relief prayed in the cross-bill be denied. The defendant, Thomas Sims, then moved the court to amend the final decree so as to cancel the charge against him in his final settlement in the Probate Court, as executor, for the amount of the purchase-money of the said land. The motion was overruled.

The complainants appealed from so much of the final decree as protected the land conveyed to Anderson against the relief sought in their bill. The defendants appealed from all of the final decree, except that part protecting the land conveyed to Anderson.

*W. C. Wells*, for Sarah M. Chapman *et al.*, appellants.

Was Anderson a *bona fide* purchaser for valuable consideration without notice? Says this court, in *Perkins* v. *Swank*, 43 Miss. 358: "He is an innocent purchaser who buys the legal estate and pays the purchase-price, without knowledge of an outstanding equity." Three things enter into this definition: 1. The pleader must have purchased the legal estate; 2. Paid the purchase-price; 3. Have had no knowledge of an outstanding equity. If Anderson lacks one of these three essentials, he cannot be an innocent purchaser.

1. Not only must Anderson have acquired the legal title when he purchased from Sims, but, to be an innocent purchaser, he must have acquired a perfect legal title. See *Boone* v. *Chiles*, 10 Pet. 212.

It must not be an equitable title, for then he would hold it subject to the equities upon it in the hands of the vendor. See *Perkins* v. *Swank*, 43 Miss. 358; Sugden on Vendors, 722; 7 Cranch, 48; *Boone* v. *Chiles*, 10 Pet. 210; *Wailes* v. *Cooper*, 24 Miss. 229, 230.

The deed from McPherson to Sims is nothing more than a

quitclaim deed. The only covenants of warranty in that deed are the statutory covenants accompanying the words "grant, bargain, and sell." See Code of 1857, 309.

McPherson only intended to convey such title as he has in the land, for he conveyed title " to the extent of the right and title of said party of the first part." A grantor without warranty is considered as intending to grant only what he has. See *Learned* v. *Corley*, 43 Miss. 708 ; 2 Parsons Contracts, 791.

A quitclaim deed is evidence of doubtful title. See *Kerr* v. *Freeman*, 33 Miss. 296 ; *Smith* v. *Winston*, 2 How. (Miss.) 601 ; *Learned* v. *Corley*, 43 Miss. 708, 709.

In the case of *Learned* v. *Corley*, *ubi supra*, the court mentions quitclaim deeds as one of the defects in a title which prevents one being an innocent purchaser; and it has been repeatedly decided that he who claims title through a quitclaim deed cannot be a *bona fide* purchaser for valuable consideration without notice. See *May* v. *Le Claire*, 11 Wall. 232 ; *Oliver* v. *Piatt*, 3 How. (U. S.) 410 ; *Woodfolk* v. *Blount*, 3 Hayw. 107.

And so one who claims through deeds without covenants of warranty cannot be an innocent purchaser. See *Oliver* v. *Piatt*, above cited.

The above authorities, I think, dispose of this whole case. If those authorities correctly state the law, then Anderson cannot be an innocent purchaser.

Again, the deed from Thomas Sims, the executor, is nothing more than a quitclaim deed. See *Smith* v. *Winston*, 2 How. (Miss.) 608 ; 2 Hilliard on Real Property, 302, referring to *Oliver* v. *Piatt*, 3 How. (U. S.) 333 ; *Gibson* v. *Mussey*, 11 Vt. 212 ; *Ware* v. *Houghton*, 41 Miss. 382 ; *Hutchins* v. *Brooks*, 31 Miss. 432.

Here, then, are two quitclaim deeds through which Anderson claims, both of which, according to *Kerr* v. *Freeman*, 33 Miss. 292, are evidence of doubtful title ; and both of which, or either, according to *Learned* v. *Corley*, 43 Miss. 708, *Oliver* v. *Piatt*, 3 How. 410, and *May* v. *Le Claire*, 11 Wall. 232, prevent Anderson from being a *bona fide* purchaser for valuable consideration without notice.

2. I will pass now to the next requisite of an innocent purchaser, which is the payment of the purchase-money. There is no doubt but that Anderson paid the amount named in his deed for the land. But he virtually admits that the last payment was made after he knew that this suit would be instituted; and, if then, he should be protected as to his first payment, certainly not as to the last.

3. I pass now to the last requisite named in the definition of an innocent purchaser; to wit, that he should have no knowledge of an outstanding equity; or that Anderson should be an innocent purchaser, he must have had no notice of the complainants' title or claim to the land.

I presume it will be admitted that Anderson is bound by whatever the record discloses, and is affected with notice. See *Learned* v. *Corley*, 43 Miss. 707; *Ware* v. *Houghton*, 41 Miss. 384; *Root* v. *McFerrin*, 37 Miss. 50; *Gorden* v. *Sizer*, 39 Miss. 805; *Wilie* v. *Brooks*, 45 Miss. 547; *Toom* v. *J. & T. Green*, MS. opinion, and cases cited.

The deed from McPherson to Thomas Sims was nothing more than a quitclaim deed. McPherson, recognizing the fact that his title was not good, refused to warrant it. He only intended to convey such title as he had, loaded with whatever equities it might have upon it. See *Learned* v. *Corley*, 43 Miss. 708. McPherson had refused to warrant the title, but proposed to reconvey to Thomas Sims only such title as had been conveyed to him by Sims, as executor. These things, as we have before shown, importing doubtful title. See *Learned* v. *Corley*, 43 Miss. 708; *Kerr* v. *Freeman, ubi supra.*

*T. J. & F. A. R. Wharton,* for W. D. Anderson, appellee.

The only question presented by the record on this appeal is, whether Anderson was a *bona fide* purchaser for valuable consideration without notice.

1. This court will not reverse the decree of a Chancery Court, founded upon facts and testimony, unless manifestly against the preponderance of facts and testimony. *Davis* v. *Richardson*, 45 Miss. 499, 510; *Wilson* v. *Beauchamp*, 50 Miss. 32; *Apple* v. *Ganong*, 47 Miss. 196.

2. The complainants, in their answer to the cross-bill, did not deny that the purchase by Anderson was made in good faith, and for valuable consideration, without notice of frauds on the part of Sims or McPherson. It is manifest that Anderson was a *bona fide* purchaser, for valuable consideration, without notice of any fraud, and that, under repeated decisions of this court, he acquired a valid title to the land against the complainants. *Boon* v. *Barnes,* 23 Miss. 138; *Wise* v. *Dandridge,* 35 Miss. 686; *Lee* v. *Portwood,* 41 Miss. 109; *Price* v. *Martin,* 46 Miss. 498; *Baker* v. *Griffin,* 50 Miss. 162. Even if Anderson had notice of the alleged frauds, still the title acquired by him would be valid, unless he colluded with Sims and McPherson in such frauds. *Price* v. *Martin,* 46 Miss. 499.

Anderson comes clearly within the rule established by this court for the protection of *bona fide* purchasers, &c., and which was thus clearly expressed in its decision in *McLeod* v. *First National Bank,* 42 Miss. 99, 112: " The general doctrine is, that, to constitute a *bona fide* purchaser for a valuable consideration without notice, he must have advanced some new consideration, either in money or property, have relinquished a pre-existing security for his debt, or have or done some act on the faith of the purchase itself, which cannot be retracted; " citing *Rollins* v. *Callender,* Freem. Ch. 295; *Rowan* v. *Adams,* S. & M. Ch. 49; *Emanuel & Barnett* v. *White,* 34 Miss. 56, 63; *Pope* v. *Pope,* 40 Miss. 516.

Again, in *Perkins* v. *Swank,* 43 Miss. 349, 358, this court say that such *bona fide* purchaser is " the especial favorite of a court of equity, and his title will be carefully protected."

*T. J. & F. A. R. Wharton,* for Thomas Sims *et al.,* appellants.

1. Mere inadequacy of price is not sufficient ground for vacating a sale of lands made under a decree of court, "unless it is such as to create an inference of fraud." *Mitchell* v. *Harris,* 43 Miss. 314, 325; *Christian* v. *O'Neal,* 46 Miss. 669, 675; *Price* v. *Martin,* 46 Miss. 489, 500.

2. Even if the evidence showed that the sale by Thomas Sims, as executor, &c., of J. H. Sims, was fraudulent, because McPherson then purchased the lands for said Sims, still the decree of the Chancery Court should be reversed, unless the evidence also shows that the decree under which such sale was made was procured by the fraudulent acts and representations of Thomas Sims. If such decree for sale was not procured by such fraudulent means, it remains yet to be executed by a valid sale of the lands; and it stands as a divestiture of the title of the heirs of J. H. Sims, the defendants in error, and an investiture of the title to them in Thomas Sims, as executor of J. H. Sims, for the purpose of selling them for the payment of the debts provided for therein. *Short* v. *Porter*, 44 Miss. 533, 535; *Mitchell* v. *Harris*, 43 Miss. 314, 326; *Bowers* v. *Williams*, 34 Miss. 324, 325; *Bird* v. *Furniss*, 33 Miss. 44; *Williams* v. *Stratton*, 10 S. & M. 418; *Forniquet* v. *Forstall*, 34 Miss. 87; *Anderson* v. *Tindall*, 26 Miss. 332.

3. Even if this decree for a sale of the lands for the payment of debts had included commissions allowed to the executor, which was not the case, although so insisted upon by solicitors for the complainants in the Chancery Court, and this was erroneous, such error could only be relieved against by an appeal from, or writ of error to, that decree. *Saunders* v. *Planters' Bank*, 2 S. & M. 287; *Smith* v. *Denson*, 2 S. & M. 326; *Winston* v. *McLender*, 43 Miss. 254.

4. Even if there was no error in the decree of the Chancery Court in declaring the purchase of the lands by McPherson to have been fraudulent, and for Thomas Sims, Sen., yet there was error in refusing to amend this decree so as to cancel the charge against Thomas Sims, in his final account as executor of John H. Sims, of $1,027.28, as balance of the sales of these lands. As this sale had been vacated by this decree, it was certainly erroneous to require that the executor should be held accountable for the sale price of the lands.

5. As the court decreed that W. D. Anderson acquired a valid title to the portion of these lands which was conveyed to him by Thomas Sims, as trustee for his wife and children, it was error to decree a cancellation of the deeds from Sims,

executor, &c., to McPherson, the one from McPherson to Thomas Sims, and the one from Thomas Sims to his wife and children, as it was under these deeds that W. D. Anderson purchased a portion of these lands.

*S. M. Shelton,* for Sarah M. Chapman *et al.,* appellees.

1. I admit the position of the appellants, that the judgments of the Probate Court are, like those of other courts, final and conclusive, where they have jurisdiction. We do not insist that the judgment here was void, because the proceeds of the sale made under it were applied to pay commissions; but that it was fraudulently obtained in this, that the only debt existing when the testator died, which then remained unpaid, except a small one, could have been paid with the Confederate money, which the executor by his negligence lost, and never applied to its payment, though called on to do so, which facts he concealed from the court. The court was without jurisdiction to order a sale to pay the remaining debts, they having been contracted subsequent to the testator's death. Therefore, if the evidence establish the fraudulent concealment, the decree is void for fraud, and as to the remaining debts it is void for want of jurisdiction. *Hollman* v. *Bennett,* 44 Miss. 322; *Foley* v. *McDonald,* 46 Miss. 238; *Plummer* v. *Plummer,* 37 Miss. 185; *Root* v. *McFerrin,* 37 Miss. 45; *Washburn* v. *Phillips,* 5 S. & M. 604; *Martin* v. *Williams,* 42 Miss. 210; *Jayne* v. *Boisgerard,* 39 Miss. 800; Story Eq. Pl. § 426.

2. Ordinarily the duty of an executor is to collect assets, pay off creditors, and hand the residue over to those entitled to it. Speedy settlements and payment of debts are required by law. *Hogan* v. *Barksdale,* 44 Miss. 191; *Hollman* v. *Bennett,* 44 Miss. 329.

3. An executor represents the deceased. The most exact good faith is required of him in his transactions in regard to the estate. He is bound to exercise the same prudence and caution in the administration that a judicious man, looking to his own interest, would exercise in his own affairs. *Baily* v. *Dilworth,* 10 S. & M. 409; *Boggan* v. *Walter,* 12 S. & M. 666.

4. While fraud will not be presumed, yet it is susceptible of the same proof which other facts are, and it is only neces-

sary for the testimony to satisfy the mind of its existence. *Doe* v. *Dignowitty*, 4 S. & M. 74.

5. The existence of fraud must usually be shown by circumstantial evidence, as it is generally perpetrated in such a manner as to exclude the possibility of positive proof. *Peason* v. *Nowland*, 7 S. & M. 617.

Almost the sole question raised by the appellants grows out of objections to the Chancellor's findings on the facts. I shall therefore refer to the practice in appellate courts as to reversing such findings, whether by the verdict of a jury or decree of a chancellor. 1. A verdict will not be disturbed merely because the evidence preponderates against it, unless it be clearly against the evidence or the palpable preponderance of it. *Dickson* v. *Parker*, 3 How. (Miss.) 219; *Bowers* v. *Johnson*, 10 S. & M. 169. 2. The question is not, is the verdict right, but, is it manifestly wrong? It will not be disturbed in a case of conflicting evidence, when the mind cannot repose with entire confidence and certainty on a conclusion in favor of either party. *Ward* v. *Kirkman*, 13 S. & M. 599; *Prewett* v. *Coopwood*, 30 Miss. 369; *Drake* v. *Surget*, 36 Miss. 458; *Walton* v. *Dickson*, 12 S. & M. 608; *Fox* v. *Mathews*, 33 Miss. 433.

CAMPBELL, J., delivered the opinion of the court.

The children of John H. Sims, deceased, who claim to be the real owners of certain land, which their father owned at his death, exhibited their bill in chancery, to vacate certain deeds as clouds on their title, alleging that Thomas Sims, executor of their father's will, had by falsehood and fraud obtained an order of the Probate Court to sell the land, and that said order was void; but that said executor, proceeding under it, sold the land, and himself became the purchaser of it, at an inadequate price, through the intervention of another person, who bid off the land and received a deed from the executor, and the next day conveyed it to the executor, who, after holding it awhile, conveyed it to his wife and children, reserving to himself the power to dispose of it as trustee for his wife and children; and that, subsequently, said Thomas Sims, as trustee for his wife and children, sold and conveyed to W. D. Ander-

son part of said land, and that Anderson now holds that part, and the remainder is held by the wife and children of Thomas Sims. A demurrer to the bill was sustained, so far as to dismiss all of said bill except the charge of fraud in obtaining title by Thomas Sims to said land. The remainder of the bill was answered, and all charges of fraud were denied, and Anderson claimed to have purchased in good faith, for a full price paid at the date of his deed, and without any notice of the claim of the complainants. Upon final hearing, on pleadings and evidence, it was decreed that Anderson should be protected in his title to the land he purchased, and that, as to all others, the decree of sale, and all other proceedings and deeds, by which the title to the remaining portion of said land was in the wife and children of Thomas Sims, should be cancelled and annulled. Sarah M. Chapman and the co-complainants appealed from so much of the decree as secured Anderson in his title, and Thomas Sims and others appealed from the other part of the decree.

We will not disturb the finding of the Chancellor against the title acquired by Thomas Sims, under his sale as executor, but the form of the decree is not correct with reference to the decree in favor of Anderson. It should not vacate and annul the order of sale and deeds, but should declare the wife and children of Thomas Sims trustees of the legal title for the complainants in the bill, and direct a conveyance. It was proper also to have discharged Thomas Sims, as executor, from the charge of the purchase-money of the land in his report to the court, and accounts as executor.

In the circumstances of this case, the answer of Anderson is sufficient to uphold the decree in his favor. The bill discloses a perfect legal title, according to the decree of the Chancellor on demurrer, which is not complained of, in Anderson as grantee of Thomas Sims. That is sufficient to protect him, unless he had notice of the fraudulent conduct of Thomas Sims, as executor. Anderson affirms his purchase, and payment for the land in good faith, without notice of any claim of the complainants. The bill sets forth the deed to Anderson, and shows a perfect legal title in him. The only issue, then, was as to notice to Anderson of the claim of the complainants. There was no evidence of such notice, as matter of fact. But

it is zealously urged that the muniments of title, through which Anderson derived title, consisting of the record of the probate proceeding for sale, and the deed from Sims, executor, to McPherson, the bidder, and McPherson's deed to Sims, are sufficient to charge Anderson with notice, and place him exactly in the shoes of Sims, the executor.   As already stated, the record of the Probate Court is all right, as decided in this case by the Chancellor, whose decree in this respect is not complained of.   The deed from McPherson to Sims is a mere quitclaim deed, and it is said that, as there is such a deed in the chain of Anderson's title, he cannot be held to occupy the position of a *bona fide* purchaser.   The cases cited in support of this legal proposition are *Smith* v. *Winston*, 2 How. (Miss.) 601 ; *Kerr* v. *Freeman*, 33 Miss. 292 ; *Learned* v. *Corley*, 43 Miss. 687 ; *Oliver* v. *Piatt*, 3 How. (U. S.) 333, 410 ; *May* v. *Le Claire*, 11 Wall. 217, 232 ; *Woodfolk* v. *Blount*, 3 Hayw. 147. In *Smith* v. *Winston* the point under consideration was, whether failure of consideration could be set up by a vendee under deed, without covenants of warranty, as a defence to the recovery of the purchase-money he had promised.   It would seem that to suggest the question was to indicate the proper answer to it; but the learned judge, delivering the opinion, discussed the question at length, and, among many other things, said, " In a quitclaim deed, the party does nothing more than to acquit the grantee from any title or right of action which he may have ; and the fact of taking nothing more than a quitclaim would, in general, imply a knowledge of doubtful title."   Again, he remarked, " The law seems to be well settled, that a purchaser without covenants takes all the risk of title."   The remark last quoted was pertinent, and all that was necessary to dispose of the point.   It is indisputable that a purchaser without covenants takes all the risk of title, so far as any right to call on his vendor to indemnify him for a failure of title is involved.   We are not able to perceive the appropriateness of the above-quoted statement, that " the fact of taking nothing more than a quitclaim would, in general, imply a knowledge of doubtful title."   Knowledge or want of it could in no way affect the question being discussed.   It was not the case of one claiming as a *bona fide* purchaser.   That

case is not an authority in support of the proposition for which it has been invoked. The case of *Kerr* v. *Freeman* is that of a complainant, claiming land under a quitclaim deed, seeking the cancellation of certain deeds operating as clouds on his title. The judge delivering the opinion, speaking of the complainant's quitclaim deed, said, "His deed merely shows a doubtful title," but it was not said that, because the complainant held under a quitclaim, he could not maintain his bill. On the contrary, the question, "whether the decree is sustained by the evidence in the cause," was minutely discussed, and the conclusion announced that it was insufficient to warrant the decree. If it be true, as a legal proposition, that a title evidenced only by a quitclaim deed is not sufficient to support a claim to have clouds removed from it, the announcement of that proposition was enough to dispose of the case, and render an examination of the evidence unnecessary. This case is not an authority for the proposition that a vendee by quitclaim cannot be regarded as a *bona fide* purchaser. *Learned* v. *Corley* contains this expression, "A quitclaim deed implies a doubtful title." But that was not pronounced sufficient, of itself, to deprive the grantee of his claim to be a *bona fide* purchaser. It seems rather to have been treated as a significant circumstance in the history of the case, fit to be considered, with other circumstances, all of which combined were held to deprive the holder of his claim as a purchaser in good faith.

In *Oliver* v. *Piatt* this language is found: "Another significant circumstance is, that this very agreement contained a stipulation that Oliver should give a quitclaim deed only for the tracts; and the subsequent deeds given by Oliver to him, accordingly, were drawn up without any covenants of warranty, except against persons claiming under Oliver, or his heirs and assigns. In legal effect, therefore, they did convey no more than Oliver's right, title, and interest in the property; and, under such circumstances, it is difficult to conceive how he can claim protection as a *bona fide* purchaser," &c. It is observable that the quitclaim deed, in pursuance of a previous stipulation for such a one, was declared to be a "significant circumstance," in connection with others in themselves sufficient to deprive the grantee of his claim to be treated as a *bona fide* purchaser. The

quitclaim deed is not pronounced to be *per se* enough to rob its holder of the character of a *bona fide* purchaser. In *May* v. *Le Claire* this language is used: " The evidence satisfies us that Cook had full notice of the frauds of Powers, and of the infirmities of Dessaint's title. Whether this were so or not, having acquired his title by a quitclaim deed, he cannot be regarded as a *bona fide* purchaser without notice. In such cases the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey." And *Oliver* v. *Piatt*, 3 How. (U. S.) 333, is referred to in support of the proposition. No other authority is cited. After declaring " that Cook had full notice of the frauds of Powers, and of the infirmities of Dessaint's title," it was surely unnecessary to say more, and the remark about the quitclaim deed is as perfect a specimen of an *obiter dictum* as the books afford. We have above shown that the single case cited in support of this *dictum* merely treated the quitclaim in that case as a "significant circumstance," and did not announce that it alone was in itself a bar to the claim to be a *bona fide* purchaser. In *Woodfolk* v. *Blount*, the court, hesitatingly and doubtfully, suggested that, perhaps, " the vendee in all cases, when he receives but a special warranty or quitclaim conveyance, takes the estate subject to all the disadvantages that it was liable to in the hands of the vendor, and the law will presume notice of all incumbrances, either legal or equitable. The circumstance of a vendor refusing to make a full and ordinary assurance is sufficient to excite suspicion and put the party upon inquiry." Not a single authority is referred to, except cases on the subject of "indorsement of a bill without recourse after it is due," which hold that the indorsee takes subject to all equities. The language immediately afterwards used in the opinion is: " The principles in relation to conveyances of real property with special warranty, perhaps, will be found equally applicable. However, it is not necessary to give a positive opinion on this subject." It is just to assume that the judge delivering that opinion would have cited some text-book or adjudication, if he could have found one to sustain the view he expressed. His citation of cases of indorsements of bills after maturity shows his anxiety on the subject, and suggests his inability to find any authority in point.

We conclude that there is no *authority* for the proposition that a quitclaim deed in the chain of title deprives him who claims under it of the character of a *bona fide* purchaser. There are *dicta* and suggestions and inferences to that effect. But we deny and repudiate the proposition as unsound and insupportable on authority, principle, or policy.

We concede' that, under some circumstances, a quitclaim deed may be a " significant circumstance " in the consideration of a combination of circumstances of which it may be a part, but this is the greatest force it can possibly have in any case. Rawle, in his valuable work on " Covenants for Title,"quoting the remark of Story, J., in *Oliver* v. *Piatt*, *ubi supra*, referring to the deed with special warranty, that it was a " significant circumstance " in affecting a purchaser with notice of a paramount title, says, " But there would appear to be equal reason for the opposite argument, that a deed with general warranty was as significant a circumstance, that unless there had been something wrong about the title, the purchaser would not have demanded a general covenant, and that he intended to run the risk of the defect, and rely on the covenant for his protection. In the absence of local usage, it would seem that no presumption of notice can properly arise, either from the absence or presence of unlimited covenants." Rawle on Covenants for Title (4th ed.), 35. This learned author in a note refers to *Woodfolk* v. *Blount*, *ubi supra*, in the same connection. No other case is referred to. There is no reference to the subject of a distinction between quitclaim deeds or deeds with special covenants, and those with general covenants of warranty, as a protection to *bona fide* purchasers, or as a significant circumstance to put one on inquiry, in the full and learned discussion of *bona fide* purchasers by the English and American editors of Leading Cases in Equity, in connection with the case of *Basset* v. *Nosworthy*, 2 Lead. Cas. in Eq. (3d Am. ed.) 101, except to remark, " But there is some difficulty in assenting to a *dictum* in *Oliver* v. *Piatt*, 3 How. 333, that taking a deed with a covenant of special warranty is sufficient to show a doubt of the warrantor's title," &c. The case of *Le Neve* v. *Le Neve*, 2 Lead. Cas. in Eq. 127 *et seq.*, presents an exhaustive discussion of the subject of notice, as considered by the

English and American adjudications, and nowhere among them is a distinction between a quitclaim and a warranty deed adverted to as affecting a holder with notice or putting him on inquiry. Nor is there any reason for such a distinction. A covenant of warranty does not convey title. It cannot enlarge a title conveyed by the deed in which it is inserted. It is no more than a covenant to indemnify against failure of title by eviction, actual or constructive. A quitclaim deed is as effectual to convey title as one with general warranty. Under our statute it has the same effect to " estop the grantor and his heirs from asserting a subsequently acquired adverse title to the lands conveyed " as a deed with covenants of general warranty has. Code, § 2300, copied from the Code of 1857. If the vendor has a good title, a covenant of warranty is useless to the vendee, but if the vendee doubts it or does not know of it, he quite naturally exacts a covenant of warranty for his indemnity, and there is force in the suggestion of Rawle, quoted above, that requiring a covenant of warranty, if any presumption arises from it, is rather calculated to suggest either a doubt of the title or carelessness and indifference about it, and a looking to the covenant of warranty for indemnity against possible failure of title. In *Cresson* v. *Miller*, 2 Watts, 272, it was argued by counsel that, because the deed under which a party claimed contained a general warranty, the purchaser could not claim to be a *bona fide* purchaser without notice. The judge responded that he had looked into the cases, and failed to " find a trace of such a distinction; it has also escaped the research of the learned counsel; and it seems to me that it is as unsupported by reason and policy as by authority." So we say, and we fully approve and adopt the language of Rawle, quoted above, " In the absence of local usage, it would seem that no presumption of notice can properly arise, either from the absence or presence of unlimited covenants." Such a doctrine, as that a quitclaim conveyance in the chain of title affects the party who claims under it with notice of infirmities in the title, would be as impolitic as it is unsupported by reason or authority. A very large number of titles depend on conveyances without any covenants of warranty. To say nothing of patents and grants by the United

States and the State, and deeds by sheriffs, tax-collectors, commissioners under decrees, trustees, executors, administrators and guardians, there are many conveyances between private individuals which do not contain covenants of warranty.

Conveyances by parents to children, and by husbands to wives, we suppose, rarely contain covenants of warranty. In the several cases in which it has been said that a quitclaim deed is evidence of a doubtful title, the controversy was with the grantee in such deed. We have shown it to be erroneous even then. But in the case at bar the deed to Anderson contains a covenant of general warranty, and the quitclaim was to his vendor. If it were true that his vendor was deprived of the character of a *bona fide* purchaser, because he held by quitclaim, according to the *dicta* we have been combating, the *bona fides* of Anderson, as indicated by his taking a deed with covenant of general warranty, should protect him against the *mala fides* of his vendor.

The decree in favor of Anderson is correct.

The decree will be reversed, and a decree entered here, dismissing the bill as to Anderson, and declaring the wife and children of Thomas Sims trustees of the title of that land not conveyed to Anderson, and directing a conveyance to be made by them to the complainants, who are children of John H. Sims, deceased, and appointing a commissioner to execute such conveyance, and discharging Thomas Sims, executor, from the charge of the purchase-money of the land in his accounts as executor.

The costs of both appeals will be taxed on Sarah M. Chapman and her co-complainants, and Anderson's costs, in both courts, will be taxed against them.