## PARKER v. RANDOLPH *et al.*

1. Respondent became the purchaser of notes and mortgages through defendant Emery, under general instructions to reinvest certain money then in Emery's hands. There was a prior mortgage on the same premises, given by defendant Randolph to Emery, which Emery sold to appellant, and discharged before record of assignment.. He subsequently procured a quitclaim deed of the mortgaged premises, and by quitclaim deed conveyed the same to respondent, who, in consideration therefor, surrendered the mortgages. *Held*, in an action by appellant to foreclose his mortgage, that respondent's quitclaim deed did not make him a *bona fide* holder of the title to the mortgaged premises. CORSON, P. J., dissenting.

2. The transfer of a note secured by a mortgage carries with it the mortgage also, and when the original mortgagee and payee sells such note without assigning the mortgage to the purchaser of the same, and then takes subsequent mortgages upon the same property and fraudulently discharges the prior mortgage, he can gain no advantage thereby, either for himself or for one for whom he is acting as agent, in any of the transactions directly involving the property mortgaged.

(Syllabus by the Court.    Opinion filed July 18, 1894.)

Appeal from circuit court, Spink county. Hon. A. W. CAMPBELL, Judge.

Action to foreclose a real estate mortgage. Judgment for defendant Lane, and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*R. B. Hassell* and *John J. Myers,* for appellant.

A purchaser by quitclaim deed is not *bona fide* and takes only the actual interest his grantor had at the time of the conveyance. Steele v. Sioux, 79 Ia. 339; Springer v. Bartle, 46 Ia. 690; Gress v. Evans, 1 Dak. 387; Postel v. Palmer, 71 Ia. 157; Peters v. Carter, 80 Mich. 124; Eaton v. Trowbridge, 38 Mich. 454; Gesh v. Packwood, 34 Fed. 372; Woodward v. Jewell, 25 Fed. 691; Peaks v. Blethen, 77 Me. 510; O'Neil v. Seixas, 85 Ala. 80; Garrett v. Christopher, 74 Tex. 453; Logan v. Neill, 128 Pa. St. 457; Leland v. Isenbeck, 1 Idaho, 469; Brown v. Jackson, What. 449; Dickenson v. Colgrover, 100 U. S. 578; Snow v. Lake, 20 Fla. 656; Martin v. Morris, 62 Wis. 418; McAow v. Black, 6 Mont. 601; Smith v. Pollard, 19 Vt. 272; Am. Mtg. Co. v. Hutchinson, 24 Pac. 515; Derrick v. Brown, 66 Ala. 162; Hancock v. Fram, 70 Tex. 314; May v. LeClaire, 11 Wall 217; Oliver v. Pratt, 3 How. 410. A purchaser must take notice of the instruments constituting his chain of title, and is charged with a knowledge of their character and conditions. Gilbert v. Peteler, 38 N. Y. 195; Dean v. Long, 122 Ill. 447; Webb. Rec. of Title, 221; Amisby v. Budd, 72 Ia. 80.

After an assignment of the mortgage note the mortgagee cannot discharge the mortgage. Vandercash v. Boker, 48 Ia. 199; Hagerman v. Sutton, 4 S. W. 73; Bragley v. Ellis, 32 N. W. 254; Jones on Mtges., § 808; Smith v. Smith, 102 N. S. 442.

*Horace Comfort,* for respondent.

FULLER, J. This was an action to foreclose a mortgage on the premises in controversy, executed by the defendant William J. Randolph and his wife to C. F. Emery on the 27th day of December, 1884, to secure their promissory note of $1,200,

of even date therewith. The complaint is in the usual form, and alleges on information and belief that the defendants George A. Poe, C. F. Emery, and I. Remsen Lane have or claim to have an interest in the premises, which interest is alleged to be subsequent to plaintiff's mortgage, and subject thereto. Upon the complaint and answer of defendant Lane the cause was tried to the court without a jury. Judgment for defendant, and plaintiff appeals.

Briefly stated, the facts are as follows, and undisputed: At the time the mortgage described in the complaint was executed, the mortgagor, William J. Randolph, was the owner of the premises. This mortgage was dated December 27, 1884, and recorded December 31, 1884, and on the 4th day of February, 1885, Emery sold the same, together with the note for $1,200, secured thereby, to the plaintiff. The note was indorsed as follows: "Pay to the order of J. E. Parker. C. F. Emery". On October 15, 1887, the defendant Randolph and his wife transferred the premises by quitclaim deed to the defendant George A Poe, which deed was recorded May 19, 1888. Before recording his deed, and on the 1st day of May, 1888, the defendant Poe mortgaged the premises to the defendant Emery, the consideration mentioned in the mortgage being $1,000; and on the following day Poe gave Emery another mortgage on the same premises, and the consideration mentioned therein was $800. The $1,000 mortgage was recorded May 19, 1888, and the $800 mortgage on July 25th of that year. Without the knowledge or consent of the plaintiff, and on the 22d day of June, 1888, the defendant Emery executed a discharge of the mortgage securing the $1,200 note which he had previously sold to plaintiff, and on the 17th day of July following caused the same to be recorded, and said mortgage was thereby satisfied of record. The plaintiff, J. E. Parker, testified upon the trial that he bought the note and mortgage described in the complaint and offered in evidence from the defendant Emery, and paid him $1,200 therefor, and that said note and mortgage

are still in his hands, unpaid and unsatisfied, and owned by him; that he had no knowledge of the execution of the discharge of the mortgage, and had never authorized Emery or any one else to make and execute or record a satisfaction of the mortgage. The defendant Lane testified that he bought the $1,000 and the $800 mortgages from the defendant Emery some time during the year 1888, and that afterwards, and on the 29th day of January, 1889, said Emery, to satisfy said Poe's mortgages, amounting to $1,800, conveyed the premises to him by quitclaim deed; and that he had no notice of plaintiff's mortgage; and that the title to said land, so far as he could see from an abstract, appeared clear, and was vested in the defendant Poe at the time he gave the $1,000 and $800 mortgages to the defendant Emery. "Q. You purchased the mortgages in July, 1888, and took a deed in January, 1889? Yes. Q. Did you, at the time the deed was given, make any payment in addition to the previous advances on the mortgages? A. None whatever. Q. How did the deed come into your possession? A. It was sent to me by Mr. Emery. Q. Had it been recorded before you received it? A. Yes. Q. What was the consideration you paid for the mortgages? A. In the month in which these mortgages were purchased I had a loan of $2,500 paid off, and under general instructions to Mr. Emery the amount so paid off was reinvested. Q. Then this was a part of the $2,500? A. Yes." It is conceded that no part of the amount for which plaintiff seeks to foreclose the mortgage has ever been paid, and that he never authorized the defendant Emery to discharge the mortgage securing the same. If plaintiff took an assignment of the mortgage from Randolph to Emery at the time he purchased the same, together with the note in suit, such assignment was never recorded. The interest of Randolph was conveyed to Poe by quitclaim deed, subject to plaintiff's mortgage; and at the time Poe executed mortgages amounting to $1,800 in favor of the defendant C. F. Emery, plaintiff's mortgage for $1,200 was of record, and the lien thereof was

paramount to such subsequent mortgages. It appears from the evidence that the defendant Emery was the agent of the defendant Lane in the month of July, 1888, with full authority, under general instructions, to collect and reinvest his principal's money; and that during said month he became the owner of the above-described mortgages, amounting to $1,800, through his said agent, C. F. Emery, although the same were not assigned to him until late in the month of November following. It also appears that after said Emery purchased the $1,000 and $800 mortgages from the defendant Poe, and before the $800 mortgage had been recorded, and in the month of July, 1888, and apparently while said Emery was acting as the agent of defendant Lane, he fraudulently discharged plaintiff's mortgage for $1,200, and satisfied the same of record, and turned the Poe mortgages over to his principal, with an abstract of title to the premises, from which it appeared that the mortgagor, Poe, at the time of the execution of the mortgages, held the property ur der a quitclaim deed from Randolph, the original mortgagor. Emery subsequently took from Poe a quitclaim deed, and by quitclaim deed transferred the premises to the defendant Lane, in satisfaction of the mortgages for $1,800. Defendant Lane examined the abstract before he purchased the property, and observed that all prior conveyances were by quitclaim deeds, and it also appeared therefrom that his agent had taken the two mortgages, amounting to $1,800, and soon afterwards discharged plaintiff's mortgage for $1,200, and took a quitclaim deed from Poe to himself; and the record was therefore sufficient to put the defendant Lane on inquiry, as a grantee in a quitclaim deed is not a *bona fide* purchaser. Such deed simply conveys all the interest, if any, which the grantor has in equity at the time of its execution; and in this case defendant's mortgages were taken by his agent, subject to plaintiff's lien, which should not be defeated by the fraudulent acts of such agent.

In Steele v. Bank, 79 Iowa, 339, 44 N. W. 564, it is said that "one who takes a mere quitclaim deed for real estate is

conclusively presumed to have notice of prior equities, and takes subject thereto; and so an unrecorded bond for a deed takes precedence of a subsequent quitclaim deed, though the deed is based upon a valuable consideration, and is taken without actual notice of the bond." In Peters v. Cartier, 80 Mich. 124, 45 N.W. 73, the court says: "Under the cloak of quitclaim deeds, schemers and speculators close their eyes to honest and reasonable inquiries, and traffic in apparent imperfections in titles. The usual method of conveying a good title—one in which the grantor has confidence—is by warranty deed. The usual method of conveying a defective title is by quitclaim deed. The rule is wise and wholesome which holds that those who take by quitclaim deed are not *bona fide* purchasers, and take only the interest which their grantor had. It is therefore immaterial whether or not Cartier had notice or knowledge of complainant's title. He must be held to have purchased at his own risk, and, Douville having no title, conveyed none to him." A quitclaim deed is sufficient to put a person on inquiry. Goddard v. Donaha, 42 Kan. 754, 22 Pac. 708. In Gest v. Packwood, 34 Fed. 368, it is held that "one who takes a mere conveyance of another's interest in real property, or a quitclaim deed thereto, is not a purchaser for a valuable consideration, within the rule in equity which protects such a purchaser against prior conveyances or rights of which he had no notice; for by the very terms of his conveyance he has notice that he is purchasing nothing more than the interest or right his vendor then had, * * * and the assignment of a mortgage thereon for an antecedent debt does not make the vendee or assignee a purchaser for a valuable consideration, so as to protect him against a prior conveyance of, or a right in or to, such property." Notice sufficient to prevent the purchase from being *bona fide* is said to inhere in the very form of this kind of conveyance. 2 Pom. Eq. Jur. 753.

It is conceded by counsel for respondent that the quitclaim deed alone would give the defendant no standing in

court, but he contends that his title rests upon the two mort-
gages from Poe to Emery, of $1,000 and $800, respectively,
which were assigned to him by said Emery. The defendant
Lane testified that Emery had general authority to invest and
reinvest at least $2,500 of his money, and that all the business
transacted in purchasing these mortgages was done through
said Emery, and that he took the quitclaim deed to the prem-
ises in satisfaction of these mortgages; and it therefore clearly
appears that the defendant Lane intended to extinguish the
mortgages, and that the same thereby became merged to the
extent of his interest in the premises. Plaintiff's mortgage
directly affected the premises in controversy at the time Emery,
as the agent of Lane, was acting in relation thereto; and the
fact that it was a valid and subsisting lien, paramount to the
Poe mortgages, was well known to the said agent; and the de-
fendant Lane is charged with a knowledge of that fact, as the
same was directly involved in matters within the scope of
Emery's authority. At the time defendant's mortgages were
executed, and for nearly three months thereafter, plaintiff's
mortgage was of record, and remained so until the same was
fraudulently released. Emery, who was acting for the defend-
ant Lane, had at the time actual notice and knowledge of its
existence, which in law became the notice and knowledge of his
principal, the defendant Lane, who is presumed to have taken
his mortgages and quitclaim deed subject to plaintiff's lien for
$1,200. Jones v. Bamford, 21 Iowa, 217; May v. Borel, 12 Cal.
91; Boone, Mortg. 69. The transfer of a note secured by mort-
gage carries with it the mortgage also, and when the original
mortgagee and payee sells such note without assigning the
mortgage to the purchaser of the same, and then takes subse-
quent mortgages upon the same property, and fraudulently dis-
charges the prior mortgage, he can gain no advantage thereby,
either for himself or for one for whom he is acting as agent, in
any of the transactions directly involving the property mort-
gaged. Walker v. Schreiber, 47 Iowa, 529. In Downer v.

Miller, 15 Wis, 612 Paine, J., speaking for the court, said: "Where a prior mortgage or judgment has by wrong or fraud been discharged of record, a subsequent mortgagee, whose rights existed at the time of such discharge, cannot claim to be injured by allowing it to be set aside and the prior mortgagee to be restored to his rights." From Banking Co. v. Woodruff, 2 N. J. Eq. 117, we quote without comment the following: "The cancellation of a mortgage on the record is only *prima facie* evidence of its discharge, and leaves it open to the party making such allegation to prove that it was made by accident, mistake, or fraud. On such proof being made, the mortgage will be established, even against subsequent mortgagees without notice." A court of equity will grant relief in cases like the present by considering a mortgage fraudulently discharged of record in full force, as the interest of justice are thereby best subserved. Barnes v. Camack, 1 Barb. 392; Eggeman v. Eggeman, 37 Mich. 436; Banta v. Vreeland, 15 N. J. Eq. 103. All the business transacted in procuring these mortgages and the quitclaim deed was done through Emery, as the agent of the defendant Lane; and under the doctrine of principal and agent he is charged with a knowledge of the acts of Emery with reference to the matters over which his authority extended, and which directly affected the premises in controversy; and, under all the circumstances of this case, the defendant Lane is not a *bona fide* owner of the premises discharged of plaintiff's mortgage, and the judgment of the trial court is therefore reversed, and a new trial is ordered.

KELLAM, J. *(Concurring.)* I think appellant is entitled to a reversal of this judgment on the ground that respondent, upon the evidence presented by the record, was not an innocent purchaser of the note and mortgage which he turned over in payment of the land, and that, under the circumstances of this case, his quitclaim deed did not make him an innocent purchaser of the mortgaged premises. As particularly noticed in

Judge FULLER'S opinion, respondent, Lane, became the purchaser of the note and mortgage through Emery, under general authority to him to reinvest his money,—that is, Emery acted for him. Emery knew all about the facts, and that the mortgage which he assumed to discharge was not paid. Lane must be charged with his agent's knowledge. He was not, therfore, a *bona fide* owner of the note and mortgage. He turned over this note and mortgage, of which he was not a *bona fide* holder as against appellant, and took a quitclaim deed from Emery, who had by quitclaim become the apparent holder of the legal title. While there is an absolute conflict of authorities as to the legal effect of a quitclaim deed, I am well satisfied that under the circumstances of this case, as exhibited by the evidence before us, respondent, Lane, ought not to be held an innocent and *bona fide* holder either of the note and mortgage or of the title to the mortgaged premises as against appellant, Parker, whose mortgage was apparently fraudulently discharged by respondent's agent and grantor. It is well known that deeds denominated quitclaim have in practical use taken a variety of forms, in some of which it is difficult to determine whether they were intended as active, specific grants, or simply releases or discharges of some possible or contingent interest in the grantor. None of the deeds are set out in the abstract, and I assume that they were simply releases. Further facts may be developed on a retrial. For these reasons I concur in the reversal.

CORSON, P. J. *(Dissenting.)* I am unable to concur with my associates in the reversal of the judgment in this case, placed, as I understand the opinion, mainly upon the ground that the defendant Lane acquired his title to the property through a "quitclaim deed," and therefore had constructive notice of the equities of Parker in the property. Judge FULLER, in the majority opinion says: "Defendant Lane examined the abstract before he purchased the property, and

observed that all prior conveyances were of quitclaim deeds, and took a quitclaim deed from Poe to himself; and the record was therefore sufficient to put defendant on inquiry, as a grantee in a quitclaim deed is not a *bona fide* purchaser.'' It seems to me that such a doctrine unnecessarily introduces into our system of conveyances a rule as to real estate titles based upon the form of the deed that can only result in uncertainty and doubt in titles which, in my opinion, should be determined by the records alone, except in the well-recognized cases of actual notice or want of consideration. Our registry laws were established for the express purpose of enabling one by an examination of the records to ascertain the true title to property therefrom. But by the decision in this case a new element is introduced. If there is in the chain of title a quitclaim deed, then no reliance can be placed upon the records, and the party purchasing is charged with notice of all outstanding equities and conveyances not recorded. Such a doctrine is very far-reaching, and renders titles in this state very uncertain, as there are probably but few titles in which there are not more or less quitclaim conveyances.

While there are some authorities that seem to sustain the position of the opinion of the court, I am of the opinion that the better-considered and later cases are opposed to the views therein expressed. I shall not undertake to do more at this time than to call attention to a few of the cases bearing upon this question: Dow v. Whitney, 147 Mass. 1, 16 N. E. 722; Chapman v. Sims, 53 Miss. 154; Willingham v. Hardin, 75 Mo. 429; Fox v. Hall, 74 Mo. 315; Graff v. Middleton, 43 Cal. 341; Frey v. Clifford, 44 Cal. 335; Hamilton v. Doolittle, 37 Ill. 473; Brown v. Oil Co., 97 Ill. 214. In the latter case the supreme court of Illinois quotes with approval from McConnel v. Reed, 4 Scam. 117, the following: ''A deed of release and quitclaim is as effectual for the purpose of transferring title to land as a deed of bargain and sale; and the prior recording of such deed will give it a preference over one previously executed, but

which was subsequently recorded. In this respect there is no distinction between different forms of conveyance. As a general rule, the one first recorded must prevail over one of older execution, when made in good faith, and when it appears to have been the intention of the parties to convey again the same lands which had been previously conveyed. . But where the terms of the second deed do not necessarily embrace the land previously conveyed, and on the contrary, are such as to show that it was not the intention of the grantor to include them, the court will give it such construction as not to embrace them," etc. The same view seems to be taken by the supreme court of Massachusetts in Dow v. Whitney, *supra*. That court says: "A deed of 'all the right, title and interest,' or of 'all the interest,' of the grantor in a lot of land, conveys the same title as a deed of the land. It is the policy of our laws that a purchaser of land, by examining the registry of deeds, may ascertain the title of his grantor. If there is no recorded deed he has the right to assume that the record title is the true title. The law has established the rule for the protection of creditors and purchasers that an unrecorded deed, if unknown to them, is, as to them, a mere nullity. The reasons for the rule apply with equal force in the case of a deed of the grantee's right, title, and interest as in that of a deed of the land. We are of the opinion, therefore, that the deed of Stephen Dow conveyed to his grantee a title which is good against any prior deed, if unrecorded. To hold otherwise would defeat the purpose of the registration laws, and create confusion in the titles to land." After referring to a number of prior cases the court says: "In each of these cases the question was not as to the effect of a prior unrecorded deed of the same land, but it was whether the land previously sold was included within the description of the latter deed. In other words it was a question of the construction of the deed relied upon. No such question can arise in the case at bar, as the description of the land intended to be conveyed is specific and exact. The same considerations apply to

the deed from Alfred A. Dow to the plaintiff." These quota-
tions I think will explain many of the cases apparently sustain-
ing the opinion of the court. The question was not, in those
cases, as to the character of the deed, but what did the grantor
intend to convey by his deed? In the case of Chapman v. Sims,
*supra*, the supreme court of Mississippi very fully reviews the
cases seeming to hold that the grantee in a quitclaim deed is
not a *bona fide* purchaser, and concludes as follows: "We con-
clude that there is no authority for the proposition that a quit-
claim deed in the chain of title deprives him who claims under
it of the character of a *bona fide* purchaser. There are *dicta*
and suggestions and inferences to that effect; but we deny and
repudiate the proposition as unsound, and insupportable on
authority, principle, or policy." The court further says:
"There is no reference to the subject of a distinction between
quitclaim deeds or deeds with special covenants and those with
general covenants of warranty as a protection to *bona fide* pur-
chasers, or as a significant circumstance to put one on inquiry,
in the full and learned discussion of *bona fide* purchasers by the
English and American editors of Leading Cases in Equity, in
connection with the case of Basset v. Nosworthy, 2 White & T.
Lead Cas. Eq. (3d Am. Ed.) 101, except to remark: 'But there
is some difficulty in assenting to a *dictum* in Oliver v. Piatt 3
How. 333, that taking a deed with a covenant of special war-
ranty is sufficient to show a doubt of the warrantor's title,' etc.
The case of Le Neve v. Le Neve, 2 White & T. Lead, Cas. Eq.
127 *et seq.*, presents an exhaustive discussion of the subject of
notice, as considered by the English and American adjudica-
tions, and nowhere among them is a distinction between a quit-
claim and a warranty deed adverted to as affecting a holder
with notice, or putting him on inquiry. Nor is there any rea-
son for such a distinction. A covenant of warranty does not
convey title. It cannot enlarge a title conveyed by the deed in
which it is inserted. It is no more than a covenant to indem-
nify against failure of title by eviction, actual or constructive

A quitclaim deed is as effectual to convey title as one with general warranty. * * * Such a doctrine as that a quitclaim conveyance in the chain of title affects the party who claims under it with notice of infirmities in the title would be as impolitic as it is unsupported by reason or authority." It seems to me, as stated by Judge CAMPBELL in the above opinion, the wiser and safer course is to give full effect to our registration laws, except when parties have taken conveyances with actual notice of outstanding equities or prior conveyances, or have taken conveyances without consideration. Of course, when a party has actual notice, or has paid no consideration, it would be a fraud upon the party holding the equity or prior title to permit such a conveyance to prevail over the equity or prior conveyance. But where one is a purchaser in good faith for value, without actual notice, he ought not to be deprived of his property because of the form of the deed or deeds in his chain of title under which he claims.